THE GREENWICH SAVINGS BANK, Plaintiff, *v.* CABIN HOLDING CORPORATION and Others, Defendants.

Supreme Court, Special Term, New York County, April 3, 1941.

*Middlebrook & Sincerbeaux* [*Alfred W. Bergren* and *Frank E. Sprower* of counsel], for the plaintiff.

*Laughlin, Gerard, Halpin & Graham* [*George A. Lewis* of counsel], for the defendants.

HOFSTADTER, J.   The plaintiff brings this action to foreclose a first mortgage in the principal sum of $300,000 on premises located in New York city.   The defendant Cabin Holding Corporation, the owner of the equity in these premises since February 4, 1929, has defaulted in pleading.   The only answering defendants, Mary D. Gerard and the executors of the estate of Marcus Daly, are made parties because of an alleged liability for any deficiency judgment that may be found due herein.   This liability is predicated upon an extension agreement entered into in 1929 between the plaintiff and Mary D. Gerard and Marcus Daly (since deceased), who then owned the property and were primarily liable for the payment of the mortgage indebtedness.   The property was thereafter sold and then resold to the Cabin Holding Corporation without assumption of the mortgage debt in either case by the purchaser. As a result of these conveyances the liability of the answering defendants became that of sureties for the payment of the mortgage indebtedness.

By the terms of the original extension agreement, the mortgagors were required to pay interest semi-annually on the first days of April and October at the rate of five per cent.

The facts have been stipulated by the parties.   On August 3, 1937, the plaintiff delivered to the Cabin Holding Corporation, in apparent response to a request of the latter, a communication which stated that it " will reduce the rate of interest of the mortgage * * * from 5% to 4% for a period of one year beginning July 1st, 1937 * * *.   We will, however, ask that in the future you make quarterly payments of interest."   At the date of the delivery of this letter the interest due the plaintiff under the extension agreement on April 1, 1937, had been paid in full.   No interest was paid as of July 1, 1937, but the interest falling due on October first was fully paid at the rate of five per cent for the first three months and at the rate of four per cent for the latter quarter. Thereafter interest was paid quarter annually at the rate of four per cent up to and including the interest due April 1, 1940 — the reduction in the interest rate having been cont nued in an exchange of correspondence on September 21, 1938.   It will be noted that by subsequent payments on January first and July first at various times the owner paid and the plaintiff accepted interest payments in advance of the due dates set forth in the original extension agreement.

The complaint in this action alleges a default in the payment of interest on July 1, 1940, and also a failure to pay taxes on the property on April 1, 1940.

It is conceded that the exchange of correspondence and the actions taken thereunder were without the knowledge and consent of the defendants sought to be held for a deficiency. It is contended on their behalf that they are released to the extent of the value of the mortgaged premises on August 3, 1937, by reason of an extension of time of the payment of the mortgage debt as well as a modification of the obligations of the extension agreement upon which their liability is predicated.

It is well settled that any change, alteration or modification of the terms of the contract between the creditor and principal in respect of the mortgage debt without the knowledge or consent of the surety works a discharge of the liability of the surety to the extent of the value of the mortgaged premises as of that date. (*Becker* v. *Faber*, 280 N. Y. 146; *New York Life Ins. Co.* v. *Casey*, 178 id. 381.) However, such modification or alteration in order to create a discharge must be the result of a binding agreement supported by a valid consideration. (*National Citizens' Bank* v. *Toplitz*, 178 N. Y. 464; *Olmstead* v. *Latimer*, 158 id. 313; *Syracuse Trust Co.* v. *First Trust & Deposit Co.*, 239 App. Div. 586.)

In support of its position that no modification or extension agreement was entered into, the plaintiff places chief reliance on the case of *Becker* v. *Faber* (*supra*). In that case the court, while affirming the well-established rule that the obligation of a surety or guarantor is *strictissimi juris*, relaxed the literal application of that doctrine by eliminating from its purview those acts which may be fairly characterized as " acts of leniency " on the part of a creditor towards a debtor. Thus it was held that the reduction of the prevailing rate of interest for a period of one year on condition that *back* taxes be satisfied was not such an alteration as would discharge the surety. But the case at bar is distinguishable. While a reduction in the rate of interest conditioned on the performance of an obligation already assumed is a clear benefit which in no wise adversely affects the obligation of the surety, a similar reduction in exchange for a requirement of quarterly interest payments is patently not in the category of a mere indulgence. The rules of law enunciated in the cited case are necessarily limited to acts of remission and waiver and do not apply to those acts which create new and burdensome rights and obligations.

If it is assumed that the letter of August 3, 1937, and the actions taken thereafter evidence a definitive agreement mutually enforcible by the parties, it is quite clear that the provisions of the extension

agreement were materially altered in that, among other considerations, the mortgage thereafter could be foreclosed for the neglect to pay quarterly interest installments on either July first or January first of the succeeding years.

The critical inquiry, therefore, is whether or not the transaction in 1937 gave rise to a valid agreement which accorded the plaintiff the right to receive and obligated the owner to pay interest quarterly instead of semi-annually, as theretofore. That such binding contract was entered into is manifest from the record. Indeed, the plaintiff itself at all times prior to the submission of this controversy so considered the matter, for its complaint in this very suit is based on a default in payment of a quarterly installment of interest alleged to have become due on July 1, 1940. It now contends that this allegation was in error and that in fact there was no *interest* default at the time of institution of suit. (The complaint is not subject to dismissal, as it also alleges a conceded default in payment of taxes.) But it is apparent from the circumstances of its inclusion that the plaintiff deemed itself entitled to demand and receive such interest payments.

The request in the letter of August 3, 1937, for interest payments was not merely a proviso in connection with the reduction of the interest rate, as to which a default would privilege the creditor to restore the original rate, but rather a stipulation exacted in exchange for the proffered benefit. In this aspect all the elements of a valid contract are present. In return for the benefit of the reduced rate of interest the principal obligated itself — by accepting and acting under the unilateral promise of its creditor — to pay interest quarterly.

Moreover, here we have writings signed by both parties and in such circumstances no consideration for the agreement contained in them is required under the provisions of section 279 of the Real Property Law.

There is nothing contained in the case of Becker v. Faber (*supra*) which is contrary to the conclusions herein reached. At page 152 the court stated that " Even a binding agreement to accept payment of past due' interest in monthly installments * * * would not have discharged the surety." The emphasis is on the nature of the interest, for the court pointed out that " there never was an instant of time when some interest was not past due." Here not only was the owner required to pay interest not yet due, but the new agreement conferred on the plaintiff the right to foreclose for the non-payment. of the interest paid in *advance*. The agreement in effect advanced the date for the payments and was not an act of leniency which merely postponed the date of payment of interest to dates subsequent to the due date originally

agreed upon. Thus, a complete change was brought about and the obligation of the sureties may not be extended to the guaranty of a contract different from that originally assumed in the absence of consent and knowledge on their part.

Accordingly, the defendants are released to the extent of the value of the mortgaged premises on August 3, 1937.

It is unnecessary to discuss the other arguments raised by the defendants except to state that the court rejects the contention that the agreement operated to extend the time of the debtor to pay the mortgage debt. It must be assumed that the parties acted with knowledge of the provisions of the moratorium legislation, to the effect that an action of foreclosure may not be founded on a default in payment of principal alone.

By stipulation between the parties, it has been agreed that the matter of the value of the premises on the indicated date be determined after the sale, on the hearing as to the fair and reasonable market value of the premises provided for by section 1083-a of the Civil Practice Act, with the same force and effect as if determined on this trial. (See *City Bank Farmers Trust Co.* v. *LaFayette Holding Corp.*, 284 N. Y. 763.)

Plaintiff may have judgment in accordance with the stipulated procedure.